UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SALLY A. GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:17-cv-02339-SEB-MJD |
| ) | |
| NANCY A. BERRYHILL, Deputy ) | |
| Commissioner for Operations of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Sally A. Giles ("Giles") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **VACATE** and **REMAND** the decision of the Commissioner.

**I. Background**

Giles filed applications for DIB and SSI on June 23, 2014 and June 30, 2014, respectively, initially alleging an onset of disability date of June 30, 2013 [Dkt. 13-5 at 2] but later amending the alleged onset date to May 30, 2012. [Dkt. 13-7 at 27.] Giles alleges disability due to myriad conditions including Degenerative Joint Disease, Osteoarthritis, Depression, Plantar Fasciitis, Cholelithias, Irritable Colon, Irritable Bowel Syndrome, Conversion Disorder, Tremors, Chronic Back Pain, C-6 Radiculopathy, C-4-5 Herniation of Thecal Sac, C-5-6 Disc Bulge, C-6-7 Disc Protrusion, Carpel Tunnel Syndrome, Lower Lumbar Facet Arthritis, and

Degenerative Levocurvature. [Dkt. 13-7 at 28.] Giles's applications were initially denied on September 19, 2014, and denied again on November 3, 2014, upon reconsideration. [Dkt. 13-3 at 38.] Giles filed a written request for a hearing, which was held on May 6, 2016, before Administrative Law Judge Blanca de la Torre. ("ALJ"). [Dkt. 13-2 at 51.] The ALJ issued a decision on May 31, 2016, again denying Giles's applications for Social Security benefits. [Dkt. 13-2 at 28.] On May 11, 2017, the Appeals Council denied Giles's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 13-2 at 7.] Giles timely filed her Complaint with this Court on July 11, 2017.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[1] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. Part. 404, Subpart P, Appendix. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

"Furthermore, the failure to specifically address evidence at step three or in the context of a specific listing does not automatically require reversal where the ALJ later addresses the evidence because the ALJ's decision must "be read as a whole [and] need not reiterate the same information in multiple parts of the decisions." *Barnhill v. Colvin*, No. 1:15-cv-1960-JMS-MJD, 2016 WL 6680358, at *5 (S.D. Ind. Nov. 14, 2016).

### III. The ALJ's Decision

The ALJ first determined that Giles met the insured status requirements of the Act through March 31, 2017 and has not engaged in substantial gainful activity since the alleged onset date. [Dkt. 13-2 at 33.] At step two, the ALJ determined that Giles "has the following severe impairments: mild degenerative disc disease of the cervical spine and lumbar spine[.]" [Dkt. 13-2 at 34.] The ALJ further found that Giles had a mental impairment involving depression, but it was nonsevere. [Dkt. 13-2 at 34.] At step three, the ALJ found that Giles did not have an impairment or combination of impairments that meet or medically equals a Listing, specifically considering Listing 1.04 for Disorders of the Spine and Listing 1.02 for Major dysfunction of the joints. [Dkt. 13-2 at 36-37.]

Before step four, "[a]fter careful consideration of the entire record," the ALJ determined that Giles had the RFC to perform a range of light work with the following limitations:

> [Giles may] lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. With appropriate breaks in the morning, at lunch and in the afternoon, she can sit for a total of six hours in an eight-hour workday. She can stand and/or walk for a total of six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolding, but occasionally can climb ramps and stairs. She cannot crawl, but occasionally can balance, stoop, crouch, and kneel. She cannot tolerate concentrated exposure to industrial vibrations. She cannot tolerate any exposure to unprotected heights. She cannot work on wet, slippery, or uneven surfaces.

[Dkt. 13-2 at 37-38.] At step four, the ALJ found that Giles is capable of performing past relevant work as a price marker, rental car clerk, and retail cashier, activities that do not require the performance of work-related activities precluded by the claimant's RFC. [Dkt. 13-2 at 43.] Based on these findings, the ALJ concluded that Giles was not disabled under the Act. [Dkt. 13-2 at 44.]

## IV. Discussion

Giles challenges the ALJ's determination on several separate issues. The Court addresses each in turn.

### A. The ALJ Failed to Consider Giles's Non-Severe Depression in her RFC

Giles first argues that the ALJ erred by failing to address Giles's non-severe impairment of depression in the RFC. As a general rule, the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *See*, *e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). When determining a claimant's RFC, an ALJ must consider non-severe impairments. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

In this case, the ALJ specifically found at step two that Giles has been diagnosed with the medically determinable impairment of major depressive disorder, moderate. [Dkt. 13-2 at 34.] Despite this finding, the ALJ expressly declined to assess this impairment in the context of her RFC, stating "since I have found the claimant's mental impairments to be non-severe, I have not included any restrictions in his (sic) residual functional capacity defined below." [Dkt. 13-2 at 36.] This was error.

Furthermore, the ALJ found at step two that Giles had "no limitation[s]" resulting from her non-severe depression, however, the ALJ then immediately stated Giles's "medically

determinable mental impairment causes no more than 'mild' limitation." [Dkt. 13-2 at 35.] These findings may be inconsistent with each other and require clarification by the ALJ.

The Social Security Administration, makes clear that step two determinations are not RFC assessments:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96–8p. Based on this ruling, in order to construct the "logical bridge" from step two to the RFC determination, the ALJ should have included any limitations, even if they are only "mild," stemming from Giles's non-severe depression in her RFC. Because the ALJ failed to build the logical bridge between her step two finding and the RFC, the Court must remand the ALJ's decision. On remand, the ALJ should clarify any limitations derived from Giles's depression and include any such limitations in her RFC determination.

### B. The ALJ Failed to Consider Giles's Medically Determinable Severe and Non-Severe Impairments

Giles next alleges that the ALJ erred by failing to incorporate "a whole list of other impairments" into her RFC. [Dkt. 18 at 17.] According to Giles, this includes her lower lumbar facet arthritis, degenerative levocurvature, osteophytes on the lumbar spine, anxiety, conversion disorder, tremors, Cholelithiasis, and irritable bowel syndrome, just to name a few of the omitted impairments. *Id.* Giles contends this is reversible error. [Dkt. 18 at 20.]

Giles is correct that when "assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR

6

96–8p. This is because such impairments, in combination with a claimant's other conditions, may "prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." *Id.*

When constructing the RFC in this case, the ALJ discussed Giles's physical impairments, particularly her musculoskeletal issues. [Dkt. 13-2 at 37-43.] However, many of the impairments, and their corresponding limitations allegedly omitted, appear to have not been considered, or even mentioned, throughout the ALJ's decision or RFC. *Id.* In particular, at no point did the ALJ discuss the impact of Giles's mental impairments, such as depression and anxiety on her RFC. *Id.* In addition, the record shows Giles does have medical diagnoses for tremors, Cholelithiasis, and Irritable Bowel Syndrome. [Dkt. 13-10 at 6, 7, and 10.] The record supports Giles's assertion that these are medically determinable impairments; the ALJ should have considered them in determining Giles's limitations and RFC.

As articulated above, the fact that the ALJ discussed Giles's depression in her step two analysis does not save the ALJ's RFC assessment. That alone would require remand, however, the ALJ should also take care to address *all* of the omitted, medically determinable impairments in the RFC upon reconsideration. Thus, the ALJ erred by failing to comply with SSR 96–8p and the case must be remanded.

### C. The ALJ Abused Her Discretion by Incorporating Only Portions the 2009 Opinion of Giles's Chiropractor

Giles next asserts that the ALJ abused her discretion when she only incorporated portions of Giles's chiropractor's 2009 opinion into her determination. [Dkt. 21 at 11.] The Court finds this argument persuasive. Here, the ALJ specifically points out from the chiropractor's 2009 report those findings that seem to support her conclusion, such as Giles's ability to lift and carry up to 20 pounds for several hours a day and push and pull up to 50 pounds for several hours a

day. [Dkt. 13-2 at 38.] The ALJ explicitly noted the 2009 report limited Giles to sitting for only one to three hours a day. [Dkt. 13-2 at 39.] However, the ALJ failed to incorporate restrictions from the report that are averse to her finding, namely, the report's conclusion that Giles must sit every one to three hours and rotate activities every one to three hours. [Dkt. 13-9 at 2.]

The ALJ's inconsistent treatment of the evidence of Giles's chiropractor's 2009 report requires remand. "We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [her] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support [her] conclusion and explain why that evidence was rejected." *Id.* (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)). As in *Moore,* the "ALJ in this case presented only a skewed version of the evidence." *Id.* The ALJ's failure to even mention the limitation, which weighs against her ultimate conclusions, gives the Court serious pause as to her treatment of the evidence.

Furthermore, despite assigning the 2009 report "moderate weight," [Dkt. 13-2 at 40] the ALJ proceeded to attribute capabilities to Giles that were directly inconsistent with the conclusions of the report. The ALJ inconsistently notes, despite the one to three hour limitation discussed above, that "[t]here is no evidence establishing that she is precluded from sitting 6 to 8 hours[.]" [13-2 at 39.] At the very least, the ALJ should have acknowledged the conflicting evidence present in the report she referenced. Here, the ALJ failed to mention the conflict, much less attempt to explain the reasoning behind her arrival at a contrary conclusion.

Furthermore, the ALJ should, as Giles asserts, explain why she incorporated only part of the 2009 report into her opinion, but omitted other parts. The ALJ's one sided discussion of the evidence and failure to build a logical bridge between the evidence and her conclusions requires remand.

### D. The ALJ Did Err Determining the Weight to Be Given the Opinions and RFC of Giles's Chiropractor

Giles next argues that the ALJ abused her discretion by failing to give proper weight to her chiropractor's 2016 opinion about her functional capacity. Here, the ALJ assigned little weight to the chiropractor's 2016 opinion. [Dkt. 13-2 at 37.] In support of this finding, the ALJ cited evidence contrary to the chiropractor's opinion, including a primary care appointment at Eskenazi Health, a physical consultative examination, the opinions of two state agency medical consultants, and Giles's work as a dog and house sitter. [Dkt. 13-2 at 41.] The ALJ stated this work required Giles to "walk for extended periods[.]" This assertion by the ALJ, however, does not appear to be supported by Giles's testimony at her hearing, as she did not testify to the duration she spent walking. [Dkt. 13-2 at 59-72.] In fact, Giles's work as a dog and house sitter did not require her to walk for extended periods; she stated that when she is dog sitting, "[o]n average, I'm sitting there with [the dogs]." [Dkt. 13-2 at 70.] The ALJ's determination that Giles walked for extended periods does not appear to be supported by any other evidence in the record. Because the determination of the weight to be given Dr. Campbell's opinion rested in part on his unsupported basis, the ALJ on remand should reweigh Dr. Campbell's opinion.

### E. The ALJ Did Not Err by Failing to Give Appropriate Weight to Giles's Coworker' Opinions.

Giles next alleges the ALJ erred when she assigned little weight to the opinions of Giles's former coworkers. Primarily, Giles contends it was inappropriate for the ALJ to find these

9

opinions untimely because they cover a period prior to the alleged onset date, when the ALJ accepted certain of Giles's chiropractor's opinions despite them covering a similar time period. [Dkt. 18 at 29.] Similar to the chiropractor's opinion, Giles's coworkers' opinions are classified as "other sources" under SSR 06-3p. However, "not every factor for weighing opinion evidence will apply in every case" and thus will vary on a case-by-case basis. SSR 06-3p.

Giles further alleges the ALJ failed to discuss the factors required under 20 C.F.R. § 404.1527(f). [Dkt. 21 at 18.] However, these factors are almost uniformly irrelevant to Giles's coworker's opinions, as neither are medical sources. 20 C.F.R. § 404.1527(f). Furthermore, as noted above, not all factors for weighing "other sources" will apply in each situation. Therefore, there is no minimal number of factors the ALJ must address in assessing opinions such as Giles's coworkers'. The statute does require the ALJ to explain the weight given opinions from such sources and include a discussion of this consideration so that a subsequent reviewer can follow their reasoning. *Id*. As has been noted by Giles, the ALJ did include her reasoning on the opinions, concluding they lack objectivity and "shed little light on the claimant's remaining functional abilities." [Dkt. 13-2 at 42.] The ALJ, therefore, reasonably complied with 20 C.F.R. § 404.1527(f), contrary to Giles's contentions.

### F.  The ALJ Did Not Err by Failing to Consider Medical Equivalence.

Giles next asserts the ALJ erred by failing to consider medical equivalence at step three. [Dkt. 18 at 32.] The step-three determination of whether a listing is met or equaled is an "ultimate legal question" left to the ALJ. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); SSR 96-6p. While the ALJ should name and addresses each relevant Listing, "failure to explicitly refer to the relevant listing" does not itself necessitate reversal. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). The claimant "has the burden of showing that his impairments

meet a listing," and the ALJ's decision as to whether a listing is met or equaled must be affirmed if supported by substantial evidence. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Moreover, the Court "will not remand a claim to the Commissioner without a showing" by the claimant, consistent with the burden of proof at step three, that remand "might lead to a different result." *Johnson v. Colvin*, No. 1:14-cv-618-SEB-DKL, 2015 WL 5032267, at *6 (S.D. Ind. Aug. 24, 2015). Furthermore, the failure to specifically address evidence at step three or in the context of a specific listing does not automatically require reversal where the ALJ later addresses the evidence because the ALJ's decision must "be read as a whole [and] need not reiterate the same information in multiple parts of the decision." *Barnhill v. Colvin*, No. 1:15-cv-1960-JMS-MJD, 2016 WL 6680358, at *5 (S.D. Ind. Nov. 14, 2016); *see also, e.g.*, *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("Schomas's concern about the format of the ALJ's decision is unfounded."). Here, however, the ALJ found that Giles "does not have a condition that meets or equals the criteria for any Listing. Even considering the combined impact of the claimant's impairments, the claimant's conditions do not equal the level of severity contemplated for any listing…." [Dkt. 13-2 at 36.] This determination echoed the findings of the State agency medical consultants, both of whom concluded, as noted by the ALJ, that Giles did not meet or equal a listing level severity. [Dkt. 13-2 at 36.]

Furthermore, Giles fails to articulate which Listing she "might" equal and, rather, generally asserts the ALJ should have done more to consider medical equivalence and that Giles's chiropractor's 2016 opinion should be considered for this purpose. [Dkt. 18 at 31.] However, as noted above, it is Giles's burden to demonstrate that remand for a new step three analysis could have produced a different result. Finally, Giles's reliance on the 2016 opinion, again, is misplaced, as the Court has declined to overturn the ALJ's assessment of that opinion.

11

### G. The ALJ Erred by Failing to Explore Giles's Reasons for Perceived Lack of Treatment

Giles finally asserts the ALJ erred by failing to explore any reasons for a perceived lack of treatment before drawing a negative inference from it. The ALJ may not solely base her credibility determination on a claimant's failure to seek medical treatment. However, though history of sporadic treatment may be used against a claimant in a credibility assessment, the ALJ must first consider possible explanations for these failures. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); S.S.R. 96-7p.

The ALJ noted Giles's treatment has been "very limited and overall conservative." [Dkt. 13-2 at 42.] The ALJ failed to discuss Giles's possible explanations for treatment irregularities throughout her opinion. Put simply, the ALJ improperly drew a negative inference from Giles's inconsistent medical treatment for her various impairments before considering possible explanations for these irregularities. At a minimum, an ALJ must first explore any reasons for the claimant's inconsistent treatment; for instance, an inability to afford treatment, avoidance of aggravating symptoms of treatment, and intolerable side effects of treatment are commonly accepted justifications for treatment gaps. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft*, 539 F.3d at 678-79; S.S.R. 96-7p at *8. The ALJ never questioned Giles nor sought an explanation on this point before drawing a negative inference in her credibility assessment. This error requires remand. *Id.*

For the ALJ's failure to seek an explanation for Giles's lack of treatment before drawing a negative inference as to her credibility, the Court finds the ALJ erred in her credibility determination and the decision must be remanded. *Moss*, 555 F.3d at 562-63; *Craft*, 539 F.3d 678-79.

## V. Conclusion

For the foregoing reasons, the Court finds that substantial evidence does not support the ALJ's decision that Sally Giles is not entitled to Disability Insurance Benefits or Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 28 JUN 2018

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.